## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT RAY McLAIN,     :
     **Plaintiff**     :
          :     **No. 1:22-cv-0100**
     **v.**     :
          :     **(Judge Rambo)**
UNITED STATES,     :
     **Defendant**     :

## MEMORANDUM

Plaintiff Robert Ray McLain initiated the above-captioned *pro se* action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80.  He alleges that federal officials at FCI Allenwood Medium, in White Deer, Pennsylvania, were negligent in their handling of the COVID-19 pandemic.  The United States moves to dismiss McLain's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that his claims are barred by the discretionary function exception to the FTCA.  The Court will deny Defendant's motion.

## I.   BACKGROUND

In January of this year, McLain filed the instant FTCA lawsuit.  (Doc. No. 1.) In his complaint, he alleges that he contracted COVID-19 and became seriously ill because prison officials failed to utilize due care with regard to protocols established to prevent the spread of this infectious disease.  (*See id.* at 7.)  He named numerous defendants, but as this Court noted in its February 10, 2022 Order (and McLain himself conceded), the only proper defendant in this FTCA action is the United

States.  (*See* Doc. No. 13 at 2 ¶ 6 (citing *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008)).)

McLain subsequently filed a host of additional motions, including requests for preemptive leave to amend, preliminary injunctive relief, appointment of counsel, criminal prosecution of FCI Allenwood staff, status updates, and multiple stays. (*See* Doc. Nos. 4, 5, 18, 20, 25, 28, 30.)  Those motions were eventually dismissed or denied.  (*See* Doc. Nos. 13, 29, 31, 34.)

On May 16, 2022, the United States filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on the FTCA's discretionary function exception.  (Doc. No. 26.)  A brief in support was filed 11 days later and served on McLain in either late May or the first week of June.  (*See* Doc. No. 27.)  The same day that Defendant filed its supporting brief, the Court received McLain's second motion to stay the case until counsel was appointed to represent him.  (Doc. No. 28.)

On July 12, 2022, the Court denied McLain's motion for appointment of counsel and dismissed as moot his request to stay the case.  (*See generally* Doc. No. 31.)  This Order also gave McLain 21 additional days to file his brief in opposition to Defendant's motion to dismiss, thus creating a revised deadline of August 2, 2022. (*Id.* at 4 ¶ 3.)  The Order was mailed the same day to McLain at FCI Schuylkill— McLain's address of record.  (*See* Doc. No. 30 at 3 (June 2022 correspondence from McLain listing his current address as FCI Schuylkill).)

On July 27, however, the Court received its July 12 Order return to sender as "refused, unable to forward."  (*See* Doc. No. 32.)  The Clerk of Court performed an online federal inmate search, determined that McLain had been transferred to RRM Philadelphia, and resent the July 12 Order to McLain at that address.  (*See id.* & docket annotation.)  On August 15, 2022, the Court received correspondence from McLain dated August 9, 2022, providing a new mailing address for a residential reentry center in New Hampshire, (Doc. No. 33), and the Court once again resent the July 12 Order to McLain's new address along with a printout of the docket, (*see id.* & docket annotation.)

McLain has failed to file a brief in opposition to Defendant's motion to dismiss despite having nearly two months to do so within time and several additional months in which to seek an extension of time after the deadline passed.  Defendant's motion, therefore, is deemed unopposed.   *See* LOCAL RULE OF COURT 7.6. Nevertheless, the Court will review Defendant's Rule 12(b)(1) motion to determine if McLain's complaint must be dismissed for lack of subject matter jurisdiction.

## II.    STANDARD OF REVIEW

Defendant brings a facial attack under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  (*See* Doc. No. 27 at 3-4.)  This type of jurisdictional challenge looks only to the plaintiff's pleadings and "does so in the light most favorable to the plaintiff."   *United States ex rel. Atkinson v. Pa.*

*Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citation omitted).  A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court[.]" *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  Thus, in reviewing a facial attack under Rule 12(b)(1), the court applies "the same standard of review" as it would apply to a motion to dismiss under Rule 12(b)(6): "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (quoting *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012)).

## III.   DISCUSSION

"The FTCA offers a limited waiver of the federal government's sovereign immunity from civil liability for negligent acts of government employees acting within the scope of their employment." *Rinaldi v. United States*, 904 F.3d 257, 273 (3d Cir. 2018); *see also* 28 U.S.C. § 1346(b)(1).  "[T]he FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court. Thus, 'the extent of the United States' liability under the FTCA is generally determined by reference to state law.'" *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361-62 (3d Cir. 2001) (quoting *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 75 (3d Cir. 1996)).

There is, however, a significant limitation on FTCA liability, often referred to as the "discretionary function exception." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012); 28 U.S.C. § 2680(a).  The discretionary function exception to the FTCA eliminates jurisdiction "for claims based upon the exercise of a discretionary function on the part of any employee of the government." *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 2680(a)).  The exception "marks the boundary between Congress'[s] willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *S.R.P. ex rel. Abunabba*, 676 F.3d at 332 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)).  The exception applies to discretionary actions "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Merando v. United States*, 517 F.3d 160, 167 (3d Cir. 2008).  The government bears the burden of establishing that the discretionary function exception applies.  *S.R.P. ex rel. Abunabba*, 676 F.3d at 333 (citation omitted).

When faced with a discretionary function challenge, the Court must first identify the conduct at issue in the FTCA claim.  *See id.* at 332.  Once the conduct is identified, the court performs a two-step inquiry to determine if the discretionary function exception immunizes the government from an FTCA claim arising out of that conduct.  *Id.* at 332-33.

First, the court considers whether the conduct at issue "is a matter of choice for the acting employee" because "conduct cannot be discretionary unless it involves an element of judgment or choice." *Baer*, 722 F.3d at 172. If a federal statute, regulation, or policy dictates a course of action for a federal employee to follow, the discretionary function exception cannot apply because "the employee has no rightful option but to adhere to the directive." *S.R.P. ex rel. Abunabba*, 676 F.3d at 333 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

If, on the other hand, a specific course of conduct is not prescribed for the employee, the court proceeds to the second step. *Id.* At step two, because the challenged conduct involves an element of judgment or choice, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). That is because the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537). The focus of this inquiry is not on the employee's subjective intent in exercising discretion, but "on the nature of the actions taken and . . . whether they are susceptible to policy analysis." *Id.* at 325. As the Supreme Court has explained, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the

regulatory regime seeks to accomplish." *Id.* at 325 n.7.  However, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Baer*, 722 F.3d at 172-73 (quoting *Gaubert*, 499 U.S. at 324).

The Court begins, as it must, by identifying the conduct at issue in McLain's FTCA claim.  McLain alleges that FCI Allenwood staff "failed to utilize 'due care' regarding COVID-19 protocols that were put in place by the [Centers for Disease Control and Prevention (CDC)] to help prevent the spread and transmission" of the virus.  (Doc. No. 1 at 7.)  He states that the CDC recommended social distancing, opening windows in indoor settings, and wearing masks.  (*Id.*)  According to McLain, FCI Allenwood staff did not adhere to these guidelines, particularly when "a good majority" of staff failed to mask properly or at all.[1]  (*Id.*)  Notably, McLain also alleges that staff were not "enforcing the Warden's Mask Mandate for the inmates."  (*Id.*)  McLain contends that this negligence by FCI Allenwood staff caused him (and other inmates) to contract COVID-19 and become seriously ill.  (*Id.*)

---

[1] Although McLain complains about the lack of social distancing, he concedes that the recommended six feet of distance "was unequivocally impossible to adhere to" in prison and was "[n]ot Allenwood's fault."  (Doc. No. 1 at 7.)

## A.      Step One – Involvement of Discretion

The United States contends that, because the CDC's guidance was not mandatory for the Bureau of Prisons (BOP), there was no prescribed course of action and thus the federal employees' actions were "a product of 'judgment or choice.'" (Doc. No. 27 at 8 (quoting *Berkovitz*, 486 U.S. at 536).)  This argument, as far as it goes, is sound.  The CDC provided some legally binding orders and guidance with respect to COVID-19, but those mandatory requirements applied only to domestic public transportation and international travel.[2]

However, Defendant fails to account for the portion of McLain's complaint in which he alleges that there was a "Mask Mandate" implemented by the warden and that FCI Allenwood correction officers were not following it.  (*See* Doc. No. 1 at 7.) Taking these allegations as true, as the Court must, it is not clear that the federal employees' purported actions involved "an element of judgment or choice" such that they could be considered discretionary.  *Berkovitz*, 486 U.S. at 536.  Indeed, if there were a masking policy established by the warden of FCI Allenwood, there would likely be no discretion on the part of correctional officers regarding whether to adhere to it.  Accordingly, because it is not clear from the face of the complaint that the conduct was discretionary, Defendant's motion to dismiss must be denied.

---

[2] *See Coronavirus Disease 2019 (COVID-19): CDC Orders*, CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/laws-regulations.html (last visited Nov. 21, 2022).

**B.     Step Two – Public Policy Analysis**

Even if the Court were to assume that the challenged conduct involved discretion and proceeded to the second step of the analysis, the same conclusion on the motion to dismiss follows.   Defendant argues that the BOP's response to COVID-19 was "complex and multi-factored, requiring significant policy analysis." (Doc. No. 27 at 9.)  According to Defendant, because the BOP's "decisions regarding how to administer its prisons during the COVID-19 pandemic are inherently grounded in . . . public policy," the discretionary function exception should apply. (*Id.* at 10-11.)

The problem with Defendant's argument is that McLain does not appear to be challenging the BOP's policies or strategies concerning COVID-19.  He is not, for example, alleging that prison officials were following flawed BOP policy or guidance and caused him harm.   Rather, McLain is contending that correctional officers were intentionally flouting an institutional mask mandate, causing or worsening the spread of the COVID-19 virus.  This type of alleged behavior cannot be considered "governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 537.  As the Third Circuit has explained, there must be a "rational nexus" between the government's conduct and the public policy purportedly furthered by it.   *S.R.P. ex rel. Abunabba*, 676 F.3d at 336 (citation omitted).  Defendant has not established that rational nexus here.

In sum, the United States has not met its burden to show that the discretionary function exception to the FTCA applies to McLain's claims.  The Court, therefore, must deny Defendant's Rule 12(b)(1) motion to dismiss.

## IV.   CONCLUSION

Based on the foregoing, the Court will deny Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated: December 9, 2022